FRANK LUMBER CO., INC.
*v.*
STATE OF OREGON,
DEPARTMENT OF REVENUE, and
JOHN J. LOBDELL, Director of
the Department of Revenue

George A. Rhoten and Gary G. Jones, Rhoten, Rhoten & Speerstra, Salem, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision, order and decree rendered for defendant December 20, 1978.

CARLISLE B. ROBERTS, Judge.

The plaintiff, an Oregon corporation, is engaged in the business of acquiring, owning and operating timberlands and timber in various counties in Oregon and in the operation of a sawmill near Mill City, Oregon, where it produces general and specialized lumber products. Plaintiff is subject to ORS 321.257 to 321.372, known as the Western Oregon Forest Land and Severance Tax Act, created by Or Laws 1977, ch 892. The defendants named are the State of Oregon, its Department of Revenue and the department's present director. The department is the state agency charged with the administration, enforcement and collection of the severance taxes. ORS 321.342(1). (Inasmuch as a complaint is sufficient if the department alone is named as defendant, the use of the singular "defendant" is followed herein. ORS 305.560(1), 305.190 and 305.570.)

■ In order to carry out its duties, defendant must necessarily obtain quantities of information from operators in the Western Oregon timber industry. *See,* for example, ORS 321.257(5), 321.282, 321.352. ORS 321.342(2) provides:

"(2) For the purpose of determining the taxes imposed by ORS 321.257 to 321.342, the department may:

"(a) Require any person to furnish any relevant information.

"(b) Examine the relevant books, records and files of such person.

"(c) Subpena and examine witnesses and administer oaths.

"(d) Enter upon and inspect the land of any owner or the land from which any timber has been harvested."

[ 556 ]

On April 7, 1978, Mr. Kent C. Tresidder, Timber Valuation Unit Appraiser, Timber Section, Assessment and Appraisal Division, Department of Revenue, wrote and mailed a letter to Mr. Richard Posekany, the timber manager of the plaintiff, advising him of the defendant's responsibilities under "the new Western Oregon Severance Tax Law," stating that defendant deemed it essential in the administration of the law "to examine the contracts of sale and all inventory data involved in your recent purchase of the Gordon Creek Tree Farm tract. * * * The Department does not want to spend substantial public funds to inventory a large tract of land and timber unless it is absolutely necessary." (*See* Def Ex A.) Apparently no satisfactory answer was made to this request, in the view of the defendant.

On August 1, 1978, the Director of the Department of Revenue issued a subpoena or "Order to Produce Records," addressed to the "Manager, Office Manager or other officer or employe of Frank Lumber Co., Inc., Mill City, Oregon." On August 8, 1978, service was made of the subpoena upon Mr. Douglas Highberger, office manager of the plaintiff, at the Mill City mill, where the records are kept. The order to produce cited the authority of the Department of Revenue under the provisions of ORS 305.190 and directed the officer to open for examination by Kent C. Tresidder, an agent of the department and the person serving the subpoena, at the plaintiff's office, "the following described records in your possession relating to the calendar year 1977:

"1. Inventory of timber on the Gordon Creek Tree Farm including a type map, summary of acres of trees under merchantable size by age and stocking classification, and summary of volume by species.

"2. A copy of the report made by whomever contracted [Timberland Services, Inc., of Albany, Oregon] with Frank Lumber Co., Inc., to do the inventory of timber on the Gordon Creek Tree Farm along with an explanation of inventory specifications and definitions

of merchantability standards and classifications used by the cruisers.

"3. Other timber purchase agreements showing date, name of grantor, consideration, copy of sale or purchase agreement, legal description and summary of the timber inventory showing acres, classes, volumes and species."

The subpoena further stated that examination and inspection of the above-described material was deemed necessary to verify timber and land sales in order to obtain data relating to timber values, necessary to carry out the department's administration of the tax laws.

Plaintiff seeks from this court a decree declaring and determining that the plaintiff is not required to comply with the order to produce records or, if it should be determined that there ought to be some compliance with the subpoena, that the court limit the defendants to the examination and inspection of records "which cannot be reasonably used to the detriment of the plaintiff in the conduct of its business; * * *." (Pl Complaint, 5.)

The plaintiff argued that the information sought by the order to produce records constituted valuable trade secrets owned by the plaintiff, that it could be expected that the information thus obtained would be used by the competitors of the plaintiff to the advantage of the competitors and to the disadvantage of the plaintiff, that the cost of the compliance with the order would be burdensome and oppressive in time and in money and that

"(f) [t]he plaintiff has no adequate remedy for the protection of its compilations of information and the protection of its knowledge, patterns of conduct and operation with respect to the acquisition of timber and timber lands and the sale of timber products."

The matter came on for trial on November 20, 1978, at which time the plaintiff introduced as witnesses Mr. Richard Posekany, Mr. Dennis Frank (president of and shareholder in the plaintiff corporation), and Mr.

Douglas Highberger (plaintiff's employee of 13 years' duration and presently office manager of the corporation).

The testimony of these witnesses indicated that compliance with the subpoena would be an annoyance and would entail some costs but no testimony was adduced to prove the approximate dollars in cost estimated, in any amount, let alone the $5,000 mentioned in the complaint. Nor was there any testimony elicited by the plaintiff which would persuade the court that the information requested should be denied to the defendant on the gound that "trade secrets" were involved. Considering the whole of the testimony, the court was led to infer that the true objection of plaintiff was that, in its view, the subpoena required revelation of the corporation's judgments, following the completion of a purchase, as shown by its allocation in its books and records, of the *values* it ascribed to its purchases of land and timber in regard to bare land, nonmerchantable timber, and reproduction timber, by size, grade and species. (The court can find no such request in the language of the subpoena; consequently, it is not necessary to decide in this suit whether such information can be required by subpoena if a request therefore is denied by the taxpayer.)

In the testimony produced in the court, plaintiff's agents admitted that they clearly understood the subpoena with regard to the actual documents to be produced, that such documents (except for the type map referred to in paragraph numbered "1") were in their possession for the calendar year 1977, and that the "other timber purchase agreements" requested in paragraph 3 of the subpoena would number "10 to 15," which the court concludes is not a burdensome request.[1]

---

[1] The plaintiff's refusal to supply the subpoenaed documents is not typical of the industry. In the Tax Court cases of *Publishers Paper Co. et al v. Dept. of Rev.* (TC No. 1183), *Boise Cascade Corp. et al v. Dept. of Rev.* (TC 1184), and *Weyerhaeuser Co. et al v. Dept. of Rev.* (TC Nos. 1185 and 1186),

■ In cases of this kind, the court must balance the interest of the parties. As a matter of law, the social interest expressed in the legislation is paramount, but the request for data must be reasonably specific, the requirements for a transfer of the information must place the least burden upon the parties subpoenaed as is practicable, and there must be as little interference with the operation of the business of the subpoenaed party as is feasible. All of these conditions have been met by the defendant. The information sought will not be used to the detriment of the plaintiff in the conduct of its business. The requested documents come within the purview of ORS 321.342(2).[2] Now, therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. The plaintiff's complaint for a declaratory decree should be and hereby is dismissed and the plaintiff shall take nothing thereby.

2. That the plaintiff shall comply with the subpoena of defendant issued on August 1, 1978, and served

now before the court, scores of documents with exactly the same kind of information sought in this suit were freely offered as exhibits to the present defendant as an aid to its administration of the Western Oregon Forest Land and Severance Tax Act.

[2] Defendant's representative, in his letter of April 7, 1978, to the plaintiff, stated that he assumed that, in submitting the data requested, the corporation would ask that it be held in confidence, and states: "Our policy would be to use this data as a part of a mass of data used to arrive at values. *None of the confidential data would be published nor* [sic] submitted to others. * * * We interpret ORS 192.500(c) [sic] as granting us the right to protect confidentially submitted data." ORS 192.500(2)(c) includes, among public records exempt from disclosure under ORS 192.410 to 192.500:

"(c) Information submitted to a public body in confidence and *not otherwise required by law to be submitted,* where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure); * * *." (Emphasis supplied.)

The court deems this exemption not to be applicable in the present case because the information requested in the disputed subpoena is "required by law" as a matter of administrative feasibility and, therefore, must be submitted by the corporation under the provisions of ORS 321.342(2).

upon plaintiff's officer on August 8, 1978, within 30 days from the date of this decree and order or in such necessary additional time as the court may specifically approve, following a motion or stipulation.