CARLISLE B. ROBERTS, Judge.
 

 On February 15,1979, the Department of Revenue caused to be served upon Mr. Steven D. Hunter, the office manager of the respondent, Eola Concrete Tile & Products Company, an "Order to Produce Records” (Def Ex A). On February 21, 1979, the department appeared in this court by counsel, G. F. Bartz, Esq., Assistant Attorney General, State of Oregon, seeking an order to Eola Concrete Tile & Products Company to comply with the subpoena or show cause why it should not be required to disclose to the department "the records requested by the Department of Revenue’s subpoena dated the 15th day of February 1979. * * *” Based on the accompanying affidavit, the court issued its order to Eola Concrete Tile
 
 &
 
 Products Company on February 21, 1979, requiring Mr. Steve Hunter to appear in the court on March 20,1979, to show cause, if any, why he had failed to comply with the subpoena. Eola Concrete Tile & Products Company filed an "Answer to Motion for Order to Show Cause” on February 22, 1979, by its counsel, T. W. Churchill, Esq., of Churchill & Leonard, Attorneys at Law, Salem, and hearing on the motion was held on March 20,1979, with counsel present, in the Salem courtroom of the Oregon Tax Court.
 

 The department’s "Order to Produce Records” was addressed to the "Manager, Office Manager or other Officer or Employe of D. N. Van Hees, Eola Concrete Tile & Products Company, 5032 Salem-Dallas Highway N.W., Salem, Oregon,” and was actually served on Mr. Steven D. Hunter, as office manager, on February 15, 1979. It read as follows:
 

 "By virtue of the authority vested in the Department of Revenue under the provisions of ORS 305.190 and
 
 *[130]
 
 related statutes, you are hereby directed to produce and it is requested that you open for the examination of Glenn Coxen or Peter Burnell, agents of the Department of Revenue, beginning on Wednesday, February 21,1979 at 10:00 a.m., at [sic] the following described records in your possession, [sic] for years 1976-77, 1977-78, 1978-79, 1979-80.
 

 "1. Asset record of machinery, equipment, fixtures, buildings and land improvements listing age, date of acquisition, whether new or used, when acquired and acquisition cost.
 

 "2. Production records, including production costs, for four producing pipe machines, including type and quantity of pipe produced by each machine for each of tiie past three years.
 

 "3. The number of persons employed, each year, for the past three yearn.
 

 "4. Copies of all leases existing between owner of physical property and the corporation which leases the property.
 

 "5. Capacity of new cement silo.
 

 "6. Detailed cost breakdown of new production building and two new pipe machines, including all contracts of labor, materials, equipment and instalation.
 

 "Examination and inspection by the Department of the above material is deemed necessary in order to be fully advised in making its appraisal for purposes of ad valorem taxation of the company and to provide data to consider and analyze for a new appraisal for January 1, 1979. The requested records will establish ownership, and will assist appraiser in estimating obsolescence of old equipment and determine cost and capability of new equipment.”
 

 The Department of Revenue is requesting information from Eola in order to fulfill a contract with Polk County to appraise certain industrial properties for ad valorem tax purposes, pursuant to ORS 306.126 and OAR 150-306.126(1)-(A) et seq. The contract could lawfully include the appraisal of both real property and personal property of the taxpayer. OAR 150-306.126(1)-(A).3.
 

 
 *[131]
 
 ORS 305.190 gives to the Director of the Department of Revenue a strong power to subpoena and examine witnesses and to order the production of books and papers "in the hands of any person, company or corporation, whenever necessary in the prosecution of any inquiries deemed necessary or proper in their official capacity.” If it encounters a negative response to a subpoena, the department may apply to the Oregon Tax Court for an order to the person to produce the books and papers or attend and testify or otherwise comply with the demand of the department.
 
 *
 

 In its trial memorandum under TC No. 1306-S and arguments in court, Eola set out its reasons for refusing fully to obey the order to produce: the demand was alleged to be "overbroad, nonspecific and irrelevant to any lawful purpose of the Department”; it would subject Eola’s trade secrets to discovery by Eola’s competitors; compliance would impose an unreasonable financial burden on Eola; and the department’s demands were in violation of the "unreasonable searches and seizures” provisions of the United States Constitution, Amend IV, and the Oregon Constitution, Art I, § 9. Further, the respondent believed that the department was considering the income approach to the value of its property and therefore contended that the capitalization of income of a going concern is not a proper method of assessing the real and personal property of a taxpayer for ad valorem tax purposes.
 

 As the court has stated in another place:
 

 "In cases of this kind, the court must balance the interest of the parties. As a matter of law, the social interest expressed in the legislation is paramount, but the request for data must be reasonably specific, the
 
 *[132]
 
 requirements for a transfer of the information must place the least burden upon the parties subpoenaed as is practicable, and there must be as little interference with the operation of the business of the subpoenaed party as is feasible. * * *”
 
 {See Frank Lumber Co. v. Dept. of Rev. et al,
 
 7 OTR 555, 560 (1978),
 
 aff'd 287
 
 Or 513, 601 P2d 765 (1979).)
 

 Upon consideration of the testimony adduced before the court and the exhibits offered into the record, the court finds as follows respecting the six demands made by the department upon Eola (as numbered and set out in the Order to Produce Records,
 
 supra):
 

 1.
 
 Eola admitted that there was no problem in providing the material requested.
 

 2. Although argument was made that the description used by the department was deficient for lack of certainty (allegedly creating confusion with No. 6), Eola’s office manager admitted that it was sufficiently clear to him as to the four pipe machines referred to. However, Eola does not maintain the records requested and the cost of constructing the desired records from sales and purchase invoices will be substantial. Mr. James D. Allgood, CPA, a witness for the corporation, testified that a reconstruction of production records could be made for prior years, but it would involve the examination of 350 invoices for each month involved. He testified that these invoices contain such a variety of items that it would require an examination averaging five minutes of time per invoice which, at the semi-senior accountant rate ($25 per hour), could cost as much as $17,500. The department asserts that this information is necessary in order to obtain data to determine the allowance for the functional obsolescence which is inherent in older machinery (an allowance which is financially advantageous to the taxpayer).
 

 3. The Department of Revenue’s request for "[t]he number of persons employed, each year, for the past three years” was made, according to the testimony of the department’s witnesses, to obtain the costs of
 
 *[133]
 
 production in aid of the determination of functional obsolescence (see No. 2, above). Eola argued that the request is too indefinite; that, while the corporation has payroll records, the plant has a great deal of turnover and, since no rationale for supplying "the number of persons employed” can be determined by Eola, it does not know how to break down the records of employment so that the data obtained would be useful. Further, if research to determine functional obsolescence is the department’s aim, only employee hours spent on specific machines would seem to be significant, omitting lists of office workers or salesmen.
 

 The court agrees that the request is lacking in specificity for property tax purposes, and recommends that a more specific request be submitted to Eola with sufficient explanation of the uses to be made of the data, by way of clarification, in order to save the corporation as much time and effort as possible in answering the request.
 

 4. The department has testified that it requires copies of all leases existing between the owner of the physical property and the corporation which leases the property because it must assess the property in the name of the owner.
 

 In many contexts, it is necessary to determine the legal ownership of property for purposes of taxation (usually in connection with some special treatment, such as exemption for taxation).
 
 See
 
 ORS 307.110, 307.112, 308.670, and 308.740. It is probably always desirable in any case to maintain accurate public records of ownership, where the statute indicates a need therefor.
 
 See
 
 ORS 308.210(2). However, the Oregon statutes recognize the difficulty, in many instances, of enforcing a rule that deeds, contracts of sale and leases of land must be recorded or otherwise divulged. Consequently, the legislature has provided that personal property can be assessed to the owner or to any person having possession and control thereof.
 
 *[134]
 
 ORS 308.105(2), 308.215(2)(a), and 308.290. The ownership of real property is supposed to be shown on the annual assessment roll (ORS 308.210(2) and 308.215(l)(a)). However, the lien of the tax runs against the land in any event and provision is made for the "unknown owner” (ORS 308.240(2): "|N]o assessment shall be invalidated * * *”). Perhaps the most specific evidence of the legislative policy is found in ORS 308.285 and 308.290(l)(b). The words, "property owned by, or
 
 in possession
 
 of the taxpayer * * *” and "owning
 
 or in possession
 
 of taxable real property * * *” (emphasis supplied), found in these sections, create an alternative which seems to protect a lessee from having to defend his title to the assessor (or, in this instance, the assessor’s agent, the Department of Revenue).
 

 5. Eola’s officers admitted that the "[c]apacity of new cement silo” was a request readily understood and as to which there would be no problem. It was generally conceded that the capacity of a silo has direct relationship to its value for purposes of taxation.
 

 6. With respect to this request (Def Ex A,
 
 supra),
 
 the department admitted that it had received partial information from a supplier as to the "two new pipe machines,” but had insufficient information to prepare a cost approach respecting the costs of labor and material necessary to the installation of the machines at Eola’s plant. The testimony of Eola’s office manager showed that there was no lack of specificity, so far as he was concerned, as to the meaning of "new production building” and of "two new pipe machines.” The request appears to seek basic data necessary to an assessor for purposes of property tax assessment. No acceptable reason has been presented to prove to the court that the information should not be supplied by Eola to the department. The argument that the department could obtain the data elsewhere (for example, by using its own construction manual for the purposes of determining the value to be attributed to the new
 
 *[135]
 
 building, and by inquiry of the manufacturer of the machines for typical costs of installation) fails to recognize that the department must constantly update its appraisal data. This can best be done by dealing directly with the property owner or lessee (the party on the ground), rather than relying on generalizations vouchsafed by third parties.
 

 Turning to the general protests of Eola found in the trial memorandum filed in TC No. 1306-S and in oral argument:
 

 Such evidence as proffered to support a violation of the "unreasonable search and seizure” clauses of the federal and state constitutions has been recognized in this opinion where the department’s demands are too indefinite or too broad, as to which the Fourth Amendment is properly invoked.
 
 Oklahoma Press Pub. Co. v. Walling,
 
 327 US 186, 208, 66 S Ct 494, 90 L Ed 614, 629, 166 ALR 531 (1946).
 

 The court recognizes Eola’s arguments respecting the monetary costs of compliance in this case. Each instance of monetary cost must stand on its own feet. In a given case, where a taxpayer has pleaded that requested records had not been maintained and that it would be costly to construct them, a different result might well follow when it is found that the owner or lessee
 
 should
 
 have maintained the records in the normal business course. Such records should be prepared by taxpayer at its own expense. In this case, a compromise is proper.
 

 Eola’s plea for the protection of trade secrets has not been supported by the evidence. Eola’s testimony respecting alleged trade secrets is marked by that indefiniteness and lack of specificity which is regularly criticized by taxpayers in their objections in subpoena enforcement cases brought against them by government.
 

 Respecting Eola’s argument that the "capitalization of income of a going concern is not a
 
 *[136]
 
 proper method of assessing its real and personal property for ad valorem tax purposes,” the department’s witness stated that an income approach was not contemplated in the present appraisal but that, within the cost approach, obsolescence factors are also measured by income differences between the subject plant and a model plant. The important point here is that a property appraiser for tax purposes is required to consider
 
 each
 
 of the three approaches to value in any appraisal. Consequently, he must be given the opportunity to gather the information which will allow him to determine which approaches are finally to be used. This is a fundamental step in determining a property valuation which is fair to the taxpayer as an individual and to all taxpayers as contributors sharing the cost of government. Now, therefore,
 

 IT IS HEREBY ORDERED that Mr. Steven D. Hunter, office manager of the Eola Concrete Tile & Products Company, and the corporation shall comply with the Department of Revenue’s Order to Produce Records (served on Mr. Hunter on February 15,1979) as follows:
 

 1. Supply a record for the corporation’s fiscal years December 1, 1976-November 30,1977, and December 1, 1977-November 30, 1978, of its machinery and equipment and its improvements to the land (including buildings and fixtures) located in Polk County, Oregon, at the address 5032 Salem-Dallas Highway N.W., Salem, Oregon, listing the age, date of acquisition, whether new or used at time of acquisition, and the cost of acquisition.
 

 2. In respect to the request for production records and costs of the four older producing pipe machines, the department shall construct the record by supplying the necessary trained personnel to make the necessary examination of invoices, said invoices to be supplied by Mr. Hunter and Eola to the department’s authorized agent at Eola’s place of business, with control of the records to be retained by Eola.
 

 
 *[137]
 
 3. Eola is not required to answer the department’s request relating to the number of persons employed by Eola each year for "the past three years” unless and until a request is made of such specificity as to make clear the steps necessary for compliance.
 

 4. Eola is not required to submit copies of leases respecting the subject property to the department.
 

 5. Eola shall inform the department of the "capacity of new cement silo.”
 

 6. Eola shall supply the department with a detailed cost breakdown of the "new production building” and of the "two new pipe machines,” including contracts for labor, materials, added equipment and installation.
 

 *
 

 Although the statute uses the word "subpena,” the department used as the title to its demand, "Order to Produce Records.” Counsel for Eola has argued: "Actually, there was no subpoena.” Counsel did not belabor this point and the court does not believe it to be a ground for dismissal of the department’s motion for an order to show cause, but the court suggests that the department adhere to the statutory use of the word "subpena” (or "subpoena”) or "subpoena duces tecum” in the future.