CARLISLE B. ROBERTS, Judge.
 

 The D. R. Johnson Lumber Co., P.Ó. Box 66, Riddle, Oregon, is an Oregon corporation. D. R. (Don) Johnson is president, general manager and a director of the corporation, all of the stock of which is owned by his family. The Riddle plant was subjected to a field appraisal by the Department of Revenue on August 17, 1972, on behalf of the county assessor, pursuant to ORS 306.126, to determine the ad valorem tax values as of January 1, 1973. For the assessment dates of January 1, 1974, through 1977, inclusive, the department sought to update its field appraisal by annual computations, using the information found on the real property tax returns filed by the taxpayer for the years 1974-1975 through 1977-1978. ORS 308.290. In 1978, the department undertook another field appraisal
 
 (see
 
 ORS 308.234) to determine the estimate of market value to be utilized for the assessment date January 1, 1979. A written appraisal report (Dept, of Rev. Ex A) was prepared under date of April 27, 1979, and a copy was sent to the taxpayer with a note over the signature of Russell A. Smith, Appraisal Engineer, Department of Revenue:
 

 "This report subject to revision pending receipt and analysis of additional data from the taxpayer that was requested prior to concluding the value estimate dated 1-1-79 and transmitted to the taxpayer on 4-27-79 and to the County Assessor on 4-27-79.”
 

 In consequence of its study, the Department of Revenue notified the County Assessor of Douglas County, by letter dated June 6, 1979, of omitted property
 
 (see
 
 ORS 311.207), listing items that had not been reported by the taxpayer on the real property returns
 
 *[215]
 
 for the years 1973 through 1977, including omitted items and values and also discarded items of machinery and equipment which were no longer in use but which had not been removed from the roll because of the taxpayer’s failure to make the proper report. For example, as of January 1, 1974, there should have been a reduction in property value of $3,780; however, for the four succeeding years, there should have been added values as follows: 1975, $92,490; 1976, $121,850; 1977, $173,250; and, for January 1, 1978, $182,380. The assessor, having been advised, sent notices of omitted property under date of June 8,1979. ORS 311.207.
 

 The Department of Revenue, on August 15, 1978, through its agent, Mr. Roy H. Trask, Appraisal Engineer, Industrial Section, Assessment and Appraisal Division, had written to Mr. D. R. Johnson, as president of the taxpayer, stating:
 

 "You are aware that I have completed my field inspection of your Riddle mill. You suggested that I put my request for information in a letter. The purpose of the inspection is for reappraisal of your plant as required by statute.” (Dept, of Rev. Ex D.)
 

 Then followed three pages of requests for explicit items of information, calling for many schedules from the books and records of the corporation. All the items requested involved records which are normally kept as basic management requirements by typical mills.
 

 The record shows that the corporation responded by sending financial statements and supplemental information (unaudited) relating to the period "April 30, 1979 and 1978.”
 
 (See
 
 Dept, of Rev. Ex E.) This statement is 11 pages long, listing balance sheet items in great detail,
 
 but with all figures omitted.
 
 This exhibit was prepared at Mr. Johnson’s direction, upon the instructions of his lawyer, to protest the type and breadth of the Department of Revenue’s demands (which were regarded by counsel and client as unreasonable).
 

 
 *[216]
 
 Apparently, after further prodding, Mr. Johnson, on December 21, 1978, wrote to Mr. Trask as follows:
 

 "In reference to your request for information concerning the market value estimates of our property, the following is enclosed:
 

 "1. A copy from our attorney advising which questions would be proper.
 

 "2. A copy of our depreciation schedules.
 

 "3. Nothing on leased equipment, as we have none. "4. Summaries of the construction costs:
 

 A. Log transfer deck................................ 1973
 

 B. Shop..................................................... 1973
 

 C. Paving done in front of office ............. 1977
 

 D. Sprinkler system................................. 1974
 

 E. Sawmill constructed .................. 1976-1977
 

 F. Paving done in yard ............................ 1978
 

 G. Planer mill & building........................ 1973
 

 "Additional information concerning the above:
 

 "1. No engineers were used except for some basic work. The construction supervisor and or myself did the balance of the engineering work, in house—we have no engineering department as such.
 

 "2. The fuel shelter and yard office were built by the yard crews in their spare time, using our own lumber.
 

 "Sorry for the delay in getting this to you.” (Dept, of Rev. ExF.)
 

 Fifteen pages of schedules were attached to this letter. The taxpayer did not supply all the information which had been requested. Mr. Johnson testified to his difficulties in preparing the necessary information; during the years involved, there had been changes in accounting firms employed by the taxpayer and three changes of bookkeepers.
 

 On June 5, 1979, the Department of Revenue filed a motion in this court for an order to show cause why D. R. Johnson Lumber Co. should not disclose to the Department of Revenue the records requested by the Department of Revenue in its subpoena and order
 
 *[217]
 
 to produce records dated April 23, 1979. The court’s order was issued on July 11, 1979, and served on Mr. D. R. Johnson, as president of the D. R. Johnson Lumber Co., requiring his appearance in Courtroom No. 401, Justice Building, Roseburg, Oregon, at 11 a.m. on August 22, 1979, to show cause why he had failed to produce the following records of D. R. Johnson Lumber Co. for the fiscal years ending in 1973 to 1978 inclusive:
 

 "1. Income and expense records, consisting of:
 

 "(a) Profit and loss statements that have been audited by certified public accountants or compiled for purposes of corporate excise tax accounting with any schedules or entries that accompany the statements that were compiled to substantiate the entries, including but not limited to depreciation schedules, explanatory footnotes or income tax offsets (such as a statement for investment tax credits).
 

 "(b) Balance sheets, showing the financial condition of the company as of certain dates, that have been audited by certified public accountants or compiled for corporation excise tax purposes, with any schedules or entries compiled to substantiate numerical results (such as a listing of fixed assets, footnotes or explanations for accounting practices or for corporate excise tax liabilities) that were submitted with the balance sheets.
 

 "2. Production costs by cost center of pond-yard, barker, chipping, sawmill, sorting chain, (hying, surfacing, shipping, mill transportation, overhead, depreciation, selling expense or other cost centers entered and recorded in the particular accounting system of the company for accounting periods covering the fiscal years ending in 1973,1974,1975,1976,1977 and 1978. (Usually these records related to volume and costs for thousand board feet log scale for logs and volume and costs for thousand board feet lumber tally for lumber products and tons or units for byproducts.)”
 

 Mr. Johnson appeared at the time required and testified that he had refused the order to produce records because he deemed the order to be an invasion of privacy, irrelevant ("there are other ways to do what the State Tax Commission [sic] wants to do”), that
 
 *[218]
 
 through the release of such information the competition would learn his secrets, to the corporation’s damage, and on the further ground of "pure harassment.”
 

 Mr. Johnson failed to prove any of these assertions. With minor exceptions, he agreed to the validity of the omitted property assessments, described above.
 

 The testimony of the department’s witnesses indicated that some of the information which was sought was deemed necessary in order to use the income approach to value. The taxpayer’s representatives argued that the income approach to value was not a valid approach in the case of lumber companies. The court rejects such arguments; the county assessor and the department have the duty to appraise property. For this purpose, they must use all of the appraisal tools available, including all the approaches to value.
 
 [1]
 
 In any given case, one or more approaches to value may be of little use, but this judgment must be made by the tax administrator, not by the taxpayer. The tax administrator cannot properly be denied the information which is necessary for a logical exercise of judgment.
 
 Cf Southern Oregon Broadcasting Co. v. Dept. of Revenue,
 
 287 Or 35, 597 P2d 795 (1979).
 
 In re Eola Concrete Tile & Prods. Co.,
 
 8 OTR 128, 135-136,
 
 aff’d
 
 288 Or 241, 603 P2d 1181 (1979).
 

 It appeared to the court that the chief problem in this matter arises from the fact, brought out in the testimony, that, during the years in question, the taxpayer did not maintain good business records. All areas of taxation require that adequate records be maintained by taxpayers engaged in business.
 
 [2]
 
 The
 
 *[220]
 
 court believes that the taxpayer now recognizes this fact and that with the employment of Mr. Mike Evers (who appeared as a witness), now comptroller of the corporation, there is promise of a better response in the future to the tax administrator’s requirements. The testimony indicated that Mr. Evers had spent many hours in surveying journal entries for the purpose of creating the ledger accounts which were required by the department.
 

 It is difficult at this stage to determine to what degree the taxpayer and its president have failed to carry out the court’s order to produce records for inspection by the Department of Revenue, but the parties hereto undoubtedly know. The court has no doubt that the records requested by the department from the corporation are of the type normally made available to the department and to the county assessors, to aid them in their statutory duties. No reason for exception has been proved to the court in this instance. Now, therefore,
 

 IT IS ORDERED that D. R. Johnson, president of the D. R. Johnson Lumber Co., P.O. Box 66, Riddle, Oregon, shall comply with the court’s order dated July 11, 1979, as to any parts thereof as to which compliance has not been made to this date.
 

 [1]
 

 The value of the income approach in appraising business property is well presented in 14 Assessors J 155 (Sept 1973),
 
 Collection and Use of Income-Expense Information,
 
 by Robert X. Briden.
 

 [2]
 

 The Internal Revenue Code dictates as a general rule that all who are required to pay income tax must keep permanent books sufficient to establish matters required to be reported. Treas Reg § 1.6001-l(a). In
 
 *[219]
 
 addition Treas Reg § 31.6001(l)(e) states that all records required by regulations shall be kept and that they sháll be available for inspection at all times.
 

 The federal Commissioner of Internal Revenue was upheld by the Circuit Court of Appeals in a ruling that failure to keep proper records resulted in a denial of claimed deductions.
 
 Hoefle v. Commissioner,
 
 114 F2d 713 (6th Cir 1940), 40-2 USTC ¶ 9673, 25 AFTR 703. A similar decision was reached in
 
 Sanford v. Commissioner,
 
 412 F2d 201 (2d Cir 1969), 69-2 USTC ¶ 9491, 24 AFTR2d 69-5021. Here it was held that Treas Reg § 1.274-5(b) and (c) specifically states that the taxpayer must substantiate by adequate records those items he wishes to claim as deductions. If not substantiated the items will be disallowed in full.
 

 In both the income tax area and the gift tax area a negligent or intentional disregard of rules and regulations can result in a penalty tax, even if there has been no intent to defraud. IRC (1978), § 6653(a), rules:
 

 "If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud) there shall be added to the tax an amount equal to 5 percent of the underpayment.”
 

 This regulation has been interpreted to mean that the failure to keep proper records is an intentional disregard of the rule. In
 
 Echols, Jr.
 
 u.
 
 Commissioner,
 
 45 TCM (P-H) 11 76-264 (1976), the plaintiff could not substantiate by adequate records those items he claimed as deductions on his income tax return. The court disallowed the deductions and in addition the court determined the deficiencies were the result of plaintiff’s negligent or intentional disregard of the rules and regulations regarding substantiation of business expenses. Therefore, a five percent penalty tax was imposed on the plaintiff pursuant to IRC (1954), § 6653(a).
 

 In
 
 Vernaccini v. Commissioner,
 
 43 TCM (P-H) ¶ 74-066 (1974), the plaintiff claimed travel and entertainment expenses but had inadequate records to substantiate the claimed deductions as required by IRC (1954), § 274(d). In response to the disallowance of the claimed deductions the plaintiff argued that section 274 was discriminatory since it only applied to businessmen. The court held that Congress may classify taxpayers for differing treatment unless the classification is so arbitrary as to have no reasonable basis.'Therefore, section 274 did not violate due process under the Fifth and Fourteenth Amendments.
 

 This court has also recognized that taxpayers have a duty to keep adequate records and that the Department of Revenue may examine books and papers whenever necessary in the prosecution of any inquiries deemed proper. The court recognized that compliance with the required production of records might be costly at times, but stated that if the owner
 
 should
 
 have maintained records in the normal course of business and did not, such records should be prepared by the taxpayer at its own expense.
 
 In re Eola Concrete Tile & Prods. Co.,
 
 8 OTR 128, 135,
 
 aff’d
 
 288 Or 241, 603 P2d 1181 (1979).
 

 By analogy to income tax case law and in following the direction this court has already chosen, it seems that the court not only can order the production of taxpayer’s records but can also insist that such records be properly kept.